IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY DEMOSS, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | NO. |
| v. | : | |
| | : | COMPLAINT |
| DELAWARE STATE UNIVERSITY, | : | |
| Defendant | : | |
| | : | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action for declaratory, injunctive and other appropriate relief is brought by Plaintiff Jeffrey DeMoss to redress the intentional violations by Defendant Delaware State University ("DSU") of the rights secured to him by the laws of the United States of America and the State of Delaware.

## JURISDICTION

2. Jurisdiction is conferred upon this court by the First and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1981, 1983, and 1985 which provide original jurisdiction for Plaintiff's claims.

3. The amount in controversy exceeds one hundred thousand dollars ($100,000).

## VENUE

4. All actions complained of herein have taken place within the jurisdiction of the United States District Court for the District of Delaware and involve a Defendant who resides within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and (c).

## PARTIES

5. Plaintiff Jeffrey DeMoss ("Plaintiff") is an adult individual who currently resides at 31055 Harbor Lane, Painter, Virginia, 23420. At all times material, Plaintiff was employed by the Defendant Delaware State University, until his termination of employment on or about October 3, 2014. At all times material during his employment with DSU, Plaintiff resided in the state of Maryland.

6. Defendant Delaware State University ("Defendant" or "DSU") is a public university located at 1200 No. DuPont Highway, Dover, Delaware 19901.

7. DSU has at all times material received federal funds.

## FACTS

8. Delaware State University is a historically black college, where the vast majority of its employees and students at all times material were African-American.

9. Plaintiff is a Caucasian male who was employed by DSU from July 9, 2007 to October 3, 2014, as its Executive Director for Dining and Auxiliary Services.

10. Plaintiff previously worked as an Executive Director, Director, or Associate Director of Dining Services for four different universities for approximately 36 years, from 1978 to 2014.

11. Plaintiff had been recruited from the University of Kentucky to DSU by DSU's Executive Vice President Amir Mohammadi to create a new Department of Auxiliary Services.

12. Plaintiff took a pay decrease to take said position with DSU.

13. Plaintiff's duties at the outset of his employment with DSU included serving as a contract liaison for dining services, the campus bookstore, the copy/post office, concessions, and university transportation programs.

14. At all times material, Plaintiff's direct supervisor was Amir Mohammadi.

15. In January of 2010, Plaintiff was also named operations director of the Martin Luther King, Jr. Student Center, as an added duty.

16. Around that same time, on January 10, 2010, Harry Lee Williams became the 10th president of DSU.

17. For the last three years of his employment, Plaintiff received the highest possible scores on his performance evaluations from DSU. Plaintiff also received the "Vice President's Award for Excellence" from DSU in September 2013.

18. In August 2014, Plaintiff began reporting to the new Vice President of Finance, Dr. Teresa Hardee, an African-American female in her late 40's.

19. Dr. Hardee did not properly supervise Plaintiff, and rarely even spoke to Plaintiff.

20. On September 19, 2014, in the fall semester, Senior Associate Vice President of Human Resources Irene C. Hawkins, an African-American female, informed Plaintiff in person and in writing that Plaintiff's employment would be terminated in two weeks, effective October 3, 2014.

21. Shortly before Plaintiff was informed of his discharge, a DSU Board Member told Plaintiff, "It seems like the white people are being let go."

22. The stated reason for Plaintiff's termination by the University was that it was part of "a substantial reorganization effort."

23. However, this was pretext, in that such a "reorganization effort" was not in fact occurring and/or did not require the elimination of Plaintiff's position.

24. In fact, Plaintiff's position continues to this day, and is being performed by African-American women who have received raises to perform said duties. Thus, the duties previously performed by Plaintiff and the salary previously paid to Plaintiff have not in fact been eliminated.

25. Upon information and belief, the decision to terminate Plaintiff was made by Dr. Teresa Hardee and DSU President Harry L. Williams, an African-American male.

26. This decision to terminate Plaintiff was actually made in order to remove Plaintiff – a Caucasian man – in favor of African-Americans.

27. Similarly, on October 28, 2014, President Williams announced Vice President of Advancement and Development Carolyn Curry, a 62 year old Caucasian female employee with ten years of service, had been relieved of her duties.

28. Various other acts by DSU prove that its termination of Plaintiff was discriminatory, not in good faith, and not done for any legitimate organizational purpose.

29. For example, DSU's practice was to give managers thirty days' notice before letting them go or eliminating their jobs. Moreover, DSU's custom and practice was to only eliminate positions at the end of the academic year, which occurs on June 30th of each year.

30. Thus, DSU always told employees on or before May 31st of each year if they were being let go and if their contract was not being renewed.

31. However, contrary to said practice, Plaintiff's employment was terminated effective October 3, 2014, at the beginning of the semester and academic year, and with only two weeks' notice.

32. DSU discharged Plaintiff two and a half months into the new fiscal year that began July 1, 2014, and nine and a half months before the end of fiscal year that ends June 30, 2015.

33. Moreover, African-American managers who were employed at the beginning of the fiscal year were retained through that same fiscal year ending June 30th, contrary to how Plaintiff was terminated mid-year. Per the University's practice, which was not provided to Plaintiff, employees who were employed at the start of the fiscal year on July 1 remained employed through the end of the fiscal year.

34. Moreover, in discharging Plaintiff, DSU retained three significantly younger, similarly situated females: 1) Student Center Director Jordan Schaffer, a Caucasian female in her 30's, married to an African-American male; 2) Michelle Martin, an African-American female in her late 40's or early 50's; 3) Michelle Fisher, an African-American female. These individuals, who held the same type of position as Plaintiff, were not only permitted to remain as employees, but were promoted to associate vice president – the same type of position that Plaintiff held - shortly thereafter.

35. Further, there are at least five African-American managers whose jobs were eliminated, but DSU placed these African-Americans in other jobs within the HR and/or Finance Departments. No such offer of placement was made to Plaintiff as part of the alleged reorganization plan.

36. Similarly, when DSU sought to terminate the employment of Vice President of Student Affairs Kemal Atkins, an African-American male, DSU merely asked Atkins to resign, it gave him several months of advance notice, it allowed Atkins to conduct a job search during work time at his DSU office, and provided Atkins with a farewell reception. DSU did not provide such a reception to Carolyn Curry or Plaintiff.

37. President Williams called Plaintiff a "fat fuck" and an "asshole" on numerous occasions. Williams falsely stated that Plaintiff "doesn't get along with black people". These statements were made in order to pretextually terminate Plaintiff.

38. As a result of the above discrimination, Plaintiff was terminated, resulting in a loss of salary of $96,000 plus benefits.

39. Moreover, Plaintiff suffered pain, suffering, emotional distress, and other lost wages, back pay, front pay, benefits, and loss of life's pleasures.

40. The discrimination of defendant directly and proximately caused said damages.

**COUNT I – EQUAL PROTECTION**
**42 U.S.C. § 1983**
**PLAINTIFF V. DEFENDANT**

41. Plaintiff incorporates the above paragraphs by reference.

42. Defendant violated the provisions of 42 U.S.C. § 1983, in that Defendant, acting under color of State law, deprived Plaintiff of the privileges and immunities secured to him by the First and Fourteenth Amendments of the United States Constitution and, in particular, his right to be free from discrimination on the basis of race and/or gender.

43. Defendant's actions violated Plaintiff's rights under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

    a.    Reinstate Plaintiff to his former position.

    b.    Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiff.

    b.    Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

    c.    Award reasonable costs and attorneys' fees;

    d.    Award punitive damages; and

    e.    Grant any other relief this Court deems just and proper under the circumstances.

### COUNT II – RACE DISCRIMINATION
### 42 U.S.C. § 1981
### PLAINTIFF V. DEFENDANT

44. Plaintiff incorporates the above paragraphs by reference.

45. Defendant violated the provisions of 42 U.S.C. § 1981, in that Defendant, acting under color of State law, deprived Plaintiff of the privileges and immunities secured to him by the First and Fourteenth Amendments of the United States Constitution and, in particular, his right to be free from discrimination on the basis of race and gender.

46. Defendant's actions violated Plaintiff's rights under 42 USC 1981.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

a. Reinstate Plaintiff to his former position.

b. Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiff.

b. Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

c. Award reasonable costs and attorneys' fees;

d. Award punitive damages; and

e. Grant any other relief this Court deems just and proper under the circumstances.

### COUNT III – RACE DISCRIMINATION
### 42 U.S.C. 2000d ("Title VI")
### PLAINTIFF V. DEFENDANT

47. Plaintiff incorporates the above paragraphs by reference.

48. Defendant receives federal funding and have received federal funding at all times material.

49. Defendant discriminated against Plaintiff on the basis of race.

50. Defendant's actions violated 42 USC 2000d, also known as Title VI of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

a. Reinstate Plaintiff to his former position.

a. Reinstate Plaintiff to his former position.

b. Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiff.

b. Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

c. Award reasonable costs and attorneys' fees;

d. Award punitive damages; and

e. Grant any other relief this Court deems just and proper under the circumstances.

### COUNT III – RACE DISCRIMINATION
### 42 U.S.C. 2000d ("Title VI")
### PLAINTIFF V. DEFENDANT

47. Plaintiff incorporates the above paragraphs by reference.

48. Defendant receives federal funding and have received federal funding at all times material.

49. Defendant discriminated against Plaintiff on the basis of race.

50. Defendant's actions violated 42 USC 2000d, also known as Title VI of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

a. Reinstate Plaintiff to his former position.

 b. Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiff.

 b. Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

 c. Award reasonable costs and attorneys' fees;

 d. Award punitive damages; and

 e. Grant any other relief this Court deems just and proper under the circumstances.

         JOSEPH W. BENSON, P.A.

         */s/Andrew G. Ahern III*
         ANDREW G. AHERN III, ESQ.
         DE Bar No. 2083
         1701 North Market Street
         P.O. Box 248
         Wilmington, DE   19899
         (302) 656-8811
         aahern@jwbpa.com
         Attorneys for Plaintiff Jeffrey DeMoss

*Of Counsel:*
Mark B. Frost, Esq.
Ryan M. Lockman, Esq.
Mark B. Frost & Associates
7 North Columbus Boulevard
Philadelphia, PA 19106
(215) 351-333

Dated:  August 8, 2016