IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY DEMOSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 1:16-cv-00680-GMS |
| ) | |
| DELAWARE STATE UNIVERSITY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

**I.    INTRODUCTION**

The Plaintiff Jeffrey DeMoss ("DeMoss") filed this lawsuit against the Delaware State University ("DSU"), and several individual University employees: Irene Chapman-Hawkins ("Hawkins"), Teresa Hardee ("Hardee"), and Harry L. Williams ("Williams") (collectively, "Individual Defendants"), on August 8, 2016. (D.I. 1.) DeMoss filed an Amended Complaint on September 16, 2016. The Complaint raises a number of claims relating to DeMoss's employment and termination of employment with DSU. Specifically, DeMoss alleges (1) violation of the right to be free from race discrimination under 42 U.S.C. § 1983, against Individual Defendants; (2) racial discrimination in violation of 42 U.S.C. § 1981 against Individual Defendants; and (3) racial discrimination in violation of 42 U.S.C. § 2000d ("Title VI") against DSU.

DSU and the Individual Defendants (collectively, the "Defendants") filed a Motion to Dismiss the Amended Complaint for failure to state a claim on October 3, 2016. (D.I. 5.) For the reasons stated below, the court will grant Defendants' motion to dismiss.

## II. BACKGROUND

Plaintiff Jeffrey DeMoss, a White male, began his employment with DSU on July 9, 2007, working primarily as its Executive Director for Dining and Auxiliary Services. (D.I. 4, ¶ 12.) Prior to his employment at DSU, DeMoss held similar positions at four different Universities over the course of thirty-six years. (*Id.* ¶ 13.) In January 2010, DeMoss was named the Operations Director of the Martin Luther King Jr. student center as an added duty. (*Id.* ¶ 18.) Around the same time, Harry Lee Williams became the tenth President of DSU. (*Id.* ¶ 19.) In August 2014, DeMoss began reporting to the new Vice President of Finance, Hardee, an African American female in her late 40's. (*Id.* ¶ 21.) On September 19, 2014, DeMoss was informed by Senior Associate Vice President of Human Resources, Hawkins that his current employment with DSU was to be terminated in two weeks due to a substantial reorganization effort by DSU. (*Id.* ¶ 23, 25.) DeMoss had previously received the highest possible performance evaluations from DSU during the last three years of his employment and the "Vice President's Award for Excellence." (*Id.* ¶ 20.) DeMoss asserts in his Amended Complaint that DSU retained three significantly younger African American females, holding similar positions as DeMoss and also promoted them to the same type of position DeMoss had held. (*Id.* ¶ 37.) DeMoss stated that the decision to retain and promote those employees and terminate his employment was "racially discriminatory." *Id.*

Count I of DeMoss's complaint alleges violation of the Equal Protection Clause under the Fourteenth Amendment under 42 U.S.C. § 1983. Count II alleges racial discrimination in violation of 42 U.S.C. § 1981 against Individual Defendants. DeMoss contends that DSU's decision to terminate his employment, while retaining and promoting similarly situated African American women, was racially discriminatory. Finally, Count III alleges racial discrimination in violation of 42 U.S.C. § 2000d ("Title VI") against DSU. DeMoss contends that he was racially discriminated

against and that the "primary purpose" of federal funding DSU receives has been to provide employment and a non-discriminatory community of students, faculty, and employees.

### III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the Plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the Plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are inadequate to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The issue for the court is "not whether the Plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). As such, the touchstone of the pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352 365 (3d Cir. 2012). Plaintiffs must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (2009).

### IV. DISCUSSION

The Defendants argue that DeMoss's Amended Complaint seeks to improperly bring a Title VII claim against DSU, and that each of DeMoss's three Counts should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6). The court examines each of DeMoss's claims in turn.

## A. **Qualified Immunity: Counts I and II**

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, (2009). "[Q]ualified immunity is an immunity from suit, rather than a mere defense to liability." *Hubbard v. Taylor*, 399 F.3d 150, 167 (3d Cir. 2005). To determine whether qualified immunity applies the court asks two questions: "(1) whether the Plaintiff has alleged the violation of an actual constitutional right, and if so, (2) whether the right was clearly established at the time of the alleged violation." [1] *Brockstedt v. Sussex Cty. Council*, 771 F. Supp. 2d 348, 355 (2011). The right Plaintiff alleges the official to have violated must have been "clearly established" in a "particularized" sense. *Abdul–Akbar v. Watson*, 4 F.3d 195, 202 (3d Cir. 1993) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Qualified immunity, thus, protects government officials from liability for "mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou,* 438 U.S. 478, 479, (1978). The court decides whether the facts alleged, taken in light most favorable to the party asserting injury, show a violation of a constitutional right and whether that right is clearly established. *Saucier v. Katz,* 533 U.S. 194, 201, 121 (2001).

Under the first prong of the qualified immunity analysis, the Plaintiff has alleged a § 1983 claim, which only needs to satisfy the notice pleading standard of Rule 8(a). *Thomas v.*

---

[1] Because of the overlap between Title VII claims and constitutional discrimination claims, the Third Circuit has applied Title VII caselaw to equal protection claims. *Stewart v. Rutgers*, 120 F.3d 426, 431–33 (3d. Cir. 1997) (citing *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)). Given the close relationship between Title VII and equal protection claims, it would have been reasonable for the Individual Defendants to believe that terminating DeMoss would not create liability under the Equal Protection Clause. *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016).

4

*Independence Tp.*, 463 F.3d 285, 295 (3d Cir. 2006). The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here the Complaint simply alleges that DeMoss was terminated on the basis of race as part of a substantial reorganization. The Complaint does not support the claim that Individual Defendants intentionally terminated DeMoss based on his race. Therefore, the termination of DeMoss alone is insufficient to remove the protection of qualified immunity from Individual Defendants under § 1983.

### B. Count I: Equal Protection Under 42 U.S.C. § 1983

Plaintiff alleges that he was discriminated against by Individual Defendants on the basis of his race in violation of 42 U.S.C. § 1983.[2] To properly plead a § 1983 claim the Plaintiff must show (1) some person has deprived him of a federal right; and (2) that the person who deprived him of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Claims under the Fourteenth Amendment require government action, however; they cannot be based on purely private conduct. *Shelley v. Kramer*, 334 U.S. 1, 13 (1948). The Fourteenth Amendment to the United States Constitution protects persons from being subjected to discrimination, by persons acting under color of state law. *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 103 (3d Cir. 1984). "[C]onduct satisfying the state action requirement of the

---

[2] Plaintiff also fails to properly bring a case under 42 U.S.C. § 1981. "[W]hen a state employee seeks to hold an individual fellow state employee liable in damages for violation of § 1981 rights" the claim must "be pursued under the remedial provisions of § 1983." *Young v. Bethlehem Area Vo-Tech School*, 2007 WL 674617 (E.D. PA 2007). In other words, though § 1981 regulates both public and private action, the Court of Appeals for the Third Circuit has held that § 1981 does not provide a remedy for a government actor's violation of its terms. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3d Cir. 2009). A claim against a government actor for a violation of § 1981 can, in appropriate circumstances, be brought under 42 U.S.C. § 1983. Therefore, the court will analyze the § 1981 claim as part of the § 1983 claim.

Plaintiff's Amended Complaint asserts one allegation against Individual Defendant, Hawkins. Hawkins, in her role as head of Human Resources of DSU, advised Plaintiff that he would be terminated effective October 3, 2014. (D.I. ¶ 20.) Plaintiff's Amended Complaint further asserts that Dr. Hardee and DSU President Harry L. Williams made the decision to terminate Plaintiff. (D.I. ¶ 28.) However, because both of these defendants are public actors, this claim cannot provide a remedy under 42 U.S.C. § 1981.

Fourteenth Amendment satisfies [Section 1983's] requirement of action under color of state law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982). "Like the state action requirement of the Fourteenth Amendment, the under color of state law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). "[S]tate employment is generally sufficient to render the defendant a state actor." *Lugar*, 457 U.S. at 935 n.18. An equal protection claim under Section 1983 requires intentional, or purposeful discrimination. *See, e.g., Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Thus, to prevail, a Plaintiff must show both that (1) there was an adverse employment action; and (2) that race was a motivating factor in the Individual Defendants' decision. *Id.*

Concerning DeMoss' claim under § 1983, the court finds that DeMoss has failed to allege sufficient facts giving rise to purposeful discrimination. While DeMoss has proven an adverse employment action took place, he must also show that Individual Defendants intentionally discriminated against him. This means that DeMoss must prove his race was a motivating factor in Individual Defendants' decision to terminate his employment. DeMoss' Complaint contains several paragraphs related to his job performance at DSU (D.I. 1, ¶ 20), his termination from his position as the Executive Director for Dining and Auxillary Services at DSU (*Id.* ¶ 32), the reason for his termination (D.I. 4 ¶ 15, 27), and DSU's contract renewal practice. (*Id.* at ¶ 36.) It seems the assertion that two African American women were hired to do his job at a higher rate of pay is the averment upon which DeMoss bases his claim that this and "[v]arious other cuts by DSU prove that its termination of Plaintiff was discriminatory, not in good faith, and not done for any legitimate purpose." (*Id.* ¶ 31.)

These are not the kind of allegations from which the court may reasonably infer that DeMoss was discriminated against because he is White. *See Iqbal*, 556 U.S. at 683. Subjective beliefs, unsupported by factual allegations, cannot give rise to an inference of discrimination. *See Rodriguez v. AMTRAK*, 532 F. App'x 152, 153 (3d Cir. 2013).

### C. **Count III: Title VI Claim**

Title VI (42 U.S.C. § 2000d) provides that, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 41 U.S.C. § 2000d; *see Alexander v. Sandoval*, 532 U.S. 275 (2001) (explaining no private right of action exists under Title VI to remedy non-intentional discrimination). While Title VI was not meant to be the primary Federal vehicle to prohibit employment discrimination, it does forbid employment discrimination by recipients where the primary objective of the Federal financial assistance to a recipient is to promote employment. 42 U.S.C. §§ 2000d-3.

The only allegation advanced by Plaintiff in support of his Title VI claim is that DSU receives federal funds. (D.I. 5 ¶ 10.) Because Plaintiff has failed to make a plausible showing that the primary purpose of the Federal funding received by DSU was for employment, his Title VI claim against DSU must be dismissed.

### V. CONCLUSION

For the foregoing reasons the court will grant the Defendants' motion to dismiss Counts I and II against Individual Defendants with leave to amend[3] and Defendant's motion to dismiss as to Count III against Delaware State University is granted with leave to amend.

---

[3] In Count I, DeMoss asserts a First amendment claim. However, he pleads no facts in either his Complaint or Amended Complaint that specify any adverse speech based action taken against him by DSU. Thus, the court cannot plausibly infer a First Amendment claim based on these pleadings.

7

Dated: September 7, 2017

_____
UNITED STATES DISTRICT COURT