IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JEFFREY DEMOSS,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )   C.A. No. 16-680 (MN)
                                         )
DELAWARE STATE UNIVERSITY, *et al.*,     )
                                         )
                    Defendants.          )

## MEMORANDUM OPINION

Andrew G. Ahern, III, Esquire: Joseph W. Benson, P.A., Wilmington, DE – attorneys for plaintiff

James Darlington Taylor, Jr., Esquire, Allison Jean McCowan, Esquire, Gerard M. Clodomir, Esquire: Saul Ewing LLP, Wilmington, DE – attorneys for defendants

October 12, 2018

NOREIKA, U.S. DISTRICT JUDGE:

## I. INTRODUCTION

On August 8, 2016, Plaintiff Jeffrey DeMoss ("Plaintiff" or "DeMoss") filed this lawsuit against Delaware State University ("DSU" or "the University") asserting claims for violation of the Equal Protection Clause and racial discrimination in connection with DeMoss's employment and termination of employment with DSU. (D.I. 1). On September 16, 2016, DeMoss filed a First Amended Complaint (D.I. 4), adding several individual University employees as defendants: Irene Chapman-Hawkins ("Hawkins"), Teresa Hardee ("Hardee"), and Harry L. Williams ("Williams") (collectively, "the Individual Defendants"). The First Amended Complaint alleged: (1) claims under 42 U.S.C. § 1983 against the Individual Defendants for violation of the Equal Protection clause; (2) claims under 42 U.S.C. § 1981 against the Individual Defendants for racial discrimination; and (3) claims under 42 U.S.C. § 2000d ("Title VI") against DSU for racial discrimination.

On October 3, 2016, DSU and the Individual Defendants (collectively, "the Defendants") filed a Motion to Dismiss the First Amended Complaint for failure to state a claim. (D.I. 5). On September 7, 2017, the Court granted the motion with leave to amend. (D.I. 16). On October 6, 2017, DeMoss filed a Second Amended Complaint that added certain allegations to the "Facts" section of the Complaint. (D.I. 28 ¶¶ 24, 25, 32, 40, 42, 43–45). On November 3, 2017, Defendants filed the instant Motion to Dismiss the Second Amended Complaint for failure to state a claim. (D.I. 21).

## II. BACKGROUND

As discussed in the Court's earlier opinion (D.I. 15) and as previously alleged in Plaintiff's Amended Complaint (D.I. 4), DeMoss "is a Caucasian male who was employed by DSU from

July 9, 2007 to October 3, 2014, as its Executive Director for Dining and Auxiliary Services."
(D.I. 4 ¶ 12; D.I. 18 ¶ 12). Prior to his employment at DSU, DeMoss held similar positions at four
different universities for approximately thirty-six years. (D.I. 4 ¶ 13; D.I. 18 ¶ 13). In
January 2010, DeMoss was "also named operations director of the Martin Luther King Jr. Student
Center, as an added duty." (D.I. 4 ¶ 18; D.I. 18 ¶ 18). Around the same time, Williams became
the tenth President of DSU. (D.I. 4 ¶ 19; D.I. 18 ¶ 19). In the three years of his employment prior
to September of 2014, "[DeMoss] received the highest possible scores on his performance
evaluations from DSU . . . [and] . . . received the 'Vice President's Award for Excellence' from
DSU in September 2013." (D.I. 4 ¶ 20; D.I. 18 ¶ 20).

In August 2014, DeMoss "began reporting to the new Vice President of Finance, Dr. Teresa
Hardee, an African American female in her late 40's." (D.I. 4, ¶ 21; D.I. 18, ¶ 21). On
September 19, 2014, DeMoss was informed by Hawkins, Senior Associate Vice President of
Human Resources, that his "employment would be terminated in two weeks, effective
October 3, 2014." (D.I. 4 ¶ 23; D.I. 18 ¶ 23). The "stated reason for Plaintiff's termination by the
University was that it was part of 'a substantial reorganization effort.'" (D.I. 4 ¶ 25; D.I. 18 ¶ 27).
DeMoss asserts that the stated reorganization effort was a "pretext" and "was not in fact occurring
and/or did not require the elimination of Plaintiff's position." (D.I. 4 ¶ 26; D.I. 18 ¶ 28). He
asserts that his "position continues to this day, and is being performed by African-American
women who have received raises to perform said duties." (D.I. 4 ¶ 27; D.I. 18 ¶ 29). He further
asserts that DSU offered positions to other African American managers whose positions were
eliminated. (D.I. 4 ¶ 38; D.I. 18 ¶ 43). And he asserts that DSU did not give him the same notice
of termination it gave to others or follow its "custom and practice . . . to only eliminate positions
at the end of the academic year." (D.I. 4 ¶¶ 32, 39; D.I. 18 ¶¶ 35, 44). DeMoss asserts that the

decision to retain and promote those employees and to terminate his employment without following the customary practice was discriminatory.

The Court dismissed Counts I and II of the First Amended Complaint, finding that the allegations were insufficient to remove the protection of qualified immunity from the Individual Defendants and insufficient for the Court to reasonably infer that DeMoss was discriminated against because he is White. (D.I. 15 at 4–7). Subjective beliefs, unsupported by factual allegations, cannot give rise to an inference of discrimination. (*Id.* at 7). The Court also dismissed Count III, finding that Plaintiff had failed to make a plausible showing that the primary purpose of the Federal funding received by DSU was for employment, and thus his Title VI claim was deficient. (*Id.*).

In his Second Amended Complaint (D.I. 18), the counts remain the same. Count I alleges an equal protection claim against the Individual Defendants arising under 42 U.S.C. § 1983 based on race discrimination. Count II alleges a race discrimination claim against the Individual Defendants under 42 U.S.C. § 1981. Count III alleges a race discrimination claim against the University under Title VI. In addition, Plaintiff added the following new allegations:

24. There was no legitimate reason for Plaintiffs termination, which was motivated by an intent to discriminate against Plaintiff on the basis of his race.

25. As set forth below, race was a motivating factor in Plaintiff's termination.

32. This motive is supported by the fact that other Caucasian employees were treated similarly as Plaintiff, and other African-American employees were treated more favorably.

40. Thus, Defendants complied with University practice with regard to African-American employees, but deviated from said practice when handling the termination of Plaintiff and another Caucasian employee. This departure from typical practice is further evidence of a discriminatory intent.

42. This is further evidence of an intent to discriminate against Plaintiff by removing him and installing African-American employees in his place.

He also added the underlined text to the following paragraphs.

43.    Further, there are at least five African-American managers whose jobs were eliminated, but DSU placed these African-Americans in other jobs within the HR and/or Finance Departments. No such offer of placement was made to Plaintiff as part of the alleged reorganization plan. <u>Again, similarly-situated African-American employees were treated more favorably than how Plaintiff was treated.</u>

44.    Similarly, when DSU sought to terminate the employment of Vice President of Student Affairs Kemal Atkins, an African-American male, DSU merely asked Atkins to resign, it gave him several months of advance notice, it allowed Atkins to conduct a job search during work time at his DSU office, and provided Atkins with a farewell reception. DSU did not provide such a reception to Carolyn Curry or Plaintiff. <u>Once again similarly situationed African-American employees were treated more favorably than how Plaintiff and another terminated Caucasian employee were treated.</u>

45.    President Williams called Plaintiff a "fat fuck" and an "asshole" on numerous occasions. Williams falsely stated that Plaintiff "doesn't get along with black people". These statements were made in order to pretextually terminate Plaintiff, <u>and Williams' reference to race is further proof that Plaintiffs status as Caucasian was a motivating factor in terminating Plaintiff.</u>

## III.   LEGAL STANDARDS

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, the Court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555)). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.   DISCUSSION

The Defendants argue that DeMoss's Second Amended Complaint does not remedy the defects identified in the Court's prior opinion, and merely adds conclusory statements that do not state plausible claims against the Defendants. Plaintiff disagrees. The Court addresses the issues below.

### A.    Qualified Immunity:  Counts I and II

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity is an immunity from suit, rather than a mere defense to liability." *Hubbard v. Taylor*, 399 F.3d 150, 167 (3d Cir. 2005). To determine whether qualified immunity applies, the Court asks two questions: "(1) whether the Plaintiff has alleged the violation of an actual constitutional right, and

if so, (2) whether the right was clearly established at the time of the alleged violation." *Brockstedt v. Sussex Cty. Council*, 771 F. Supp. 2d 348, 355 (D. Del. 2011); *Torisky v. Schweiker*, 446 F.3d 438, 442–43 (3d Cir. 2006). The right Plaintiff alleges the official to have violated must have been "clearly established" in a "particularized" sense. *Abdul-Akbar v. Watson,* 4 F.3d 195, 202 (3d Cir. 1993) (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The Court decides whether the facts alleged, taken in a light most favorable to the party asserting injury, show a violation of a constitutional right and whether that right is clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

### 1.    Count I:  Equal Protection Under 42 U.S.C. § 1983

In Count I, Plaintiff alleges that he was discriminated against by Individual Defendants based on his race in violation of 42 U.S.C. § 1983.[1] The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). An equal protection claim under § 1983 requires intentional, or purposeful discrimination. *See, e.g.*, *Johnson v. Fuentes*, 704 F. App'x 61, 65 (3d Cir. 2017).

---

[1]    In Counts I and II, Plaintiff asserts that he was deprived of "privileges and immunities secured to him by the First and Fourteenth Amendments of the United States Constitution, and in particular, his right to be free from discrimination on the basis of race and/or gender." (D.I. 18 ¶¶ 50, 53). "A public employee alleging an adverse employment action because he engaged in protected First Amendment activity must show that (1) he engaged in protected activity, and (2) the protected activity was a substantial or motivating factor for the adverse action." *Fultz v. Dunn*, 165 F.3d 215, 218 (1998) (citing *Swineford v. Snyder County*, 15 F.3d 1258, 1270 (3d Cir. 1994)). Plaintiff has pleaded no facts that specify any protected activity that was the motivating factor for his termination. The Court cannot plausibly infer a First Amendment claim based on these pleadings.

To prevail, Plaintiff must allege facts showing both that (1) there was an adverse employment action; and (2) that race was a motivating factor in the Individual Defendants' decision. *Id.*

Here, the Court previously found that DeMoss had adequately pleaded that an adverse employment action took place but had failed to allege sufficient facts that race was a motivating factor in the Individual Defendants' decision. The First Amended Complaint alleged that DeMoss was terminated based on race as part of a substantial reorganization but did not support the claim that the Individual Defendants intentionally terminated DeMoss based on his race. The Court found that fact that DeMoss was terminated, without more than had been pleaded, was insufficient to remove the protection of qualified immunity from the Individual Defendants under § 1983.

In connection with the pending motion, the Court reviews the additional allegations in the Second Amended Complaint to determine whether they address the deficiencies of the First Amended Complaint. The Court concludes that they do not. The new allegations are largely conclusory statements and summaries of previously pleaded allegations. For example, Paragraph 23 asserts a legal conclusion that "[t]here was no legitimate reason for Plaintiff's termination, which was motivated by an intent to discriminate against Plaintiff on the basis of his race." (D.I. 18 ¶ 23). Similarly, Paragraph 24 provides a lead-in to the previously pleaded allegations that is simply a conclusion: "As set forth below, race was a motivating factor in Plaintiff's termination."

The allegations in new Paragraphs 32, 40 and 42 similarly are conclusions that either lead into or summarize previously alleged facts, without providing any additional facts in support. For example, Paragraphs 40 and 42 simply summarize the preceding paragraphs (which the Court previously found were insufficient to meet the pleading standard). So too the additional sentences

added to Paragraphs 43–45 add no factual allegations, but rather conclusions based on the prior sentences.

As the Court previously recognized, subjective beliefs, unsupported by factual allegations, cannot give rise to an inference of discrimination. *See Rodriguez v. AMTRAK*, 532 F. App'x 152, 153 (3d Cir. 2013). And the allegations asserted by Plaintiff are not the kind of allegations from which the Court may reasonably infer that DeMoss was discriminated against because of his race. *See Iqbal*, 556 U.S. at 683. As Plaintiff has failed to plead adequately that race was a motivating factor in the Individual Defendants' decision to terminate his employment, and termination of DeMoss alone is insufficient to remove the protection of qualified immunity from the Individual Defendants under § 1983, Plaintiff's claim pursuant to § 1983 must be dismissed.

### 2. Count II: Race Discrimination 42 U.S.C. § 1981

As the Court previously held, Plaintiff has failed to bring a case properly under 42 U.S.C. § 1981. (D.I. 15 at 5 n.2). The Third Circuit has held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *McGovern v. City of Philadelphia*, 554 F.3d 114, 120–21 (3d Cir. 2009) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989)). In other words, though § 1981 regulates both public and private action, § 1981 does not provide a remedy for a government actor's violation of its terms. *See Ford v. SEPTA*, 374 F. App'x 325, 326 (3d Cir. 2010) ("No private right of action lies against a state actor under § 1981." (citing *McGovern*, 554 F.3d at 121 and *Jett*, 491 U.S. at 731)).[2]

---

[2] The case on which Plaintiff relies (D.I. 26 at 7–8), *Schurr v. Resorts Intern. Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999), involves a § 1981 claim brought against a private actor – not a state actor.

As the Court previously noted, Plaintiff's Second Amended Complaint asserts one allegation against Individual Defendant, Hawkins. Hawkins, in her role as head of Human Resources of DSU, advised Plaintiff that he would be terminated effective October 3, 2014. (D.I. 18 ¶ 23). Plaintiff's Second Amended Complaint further asserts that Defendants Hardee and Williams made the decision to terminate Plaintiff. (D.I. 4 ¶ 30). There is no dispute that all these defendants are public actors, and thus, Plaintiff's remedy for violation of his rights is not 42 U.S.C § 1981, but rather § 1983. To the extent Count II intends to assert a claim under § 1983, the Court's analysis above in connection with Count I applies equally to Count II.

**B.    Count III: Title VI Claim**

Title VI (42 U.S.C. § 2000d) provides that, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 41 U.S.C. § 2000d; *see also Alexander v. Sandoval*, 532 U.S. 275 (2001) (explaining no private right of action exists under Title VI to remedy non-intentional discrimination). Title VI was not meant to be the primary Federal vehicle to prohibit employment discrimination, but it does forbid employment discrimination by recipients where the primary objective of the Federal financial assistance to a recipient is to promote employment. 42 U.S.C. § 2000d-3.

The allegation advanced by Plaintiff in support of his Title VI claim in the Second Amended Complaint is identical to the allegation made in the prior Amended Complaint, namely that "DSU has at all times material received federal funds, a primary purpose of which has been to provide employment and to provide a non-discriminatory community of students, faculty and employees." (D.I. 18 ¶ 10). As the Court previously determined, this conclusory statement is not

a plausible showing that the primary purpose of the federal funding received by DSU was for employment.[3] Thus, Plaintiff's Title VI claim against DSU is dismissed.

## V.     FEES/AMENDMENT

Defendants ask that the Court dismiss the Second Amended Complaint with prejudice and award Defendants their fees and costs. (D.I. 22 at 6–7). The Court declines to do so.

Civil litigants are generally responsible for their own attorney's fees. The Court may, in its discretion, allow a prevailing party to recover reasonable attorney's fees as part of the costs pursuant to 42 U.S.C. § 1988(b), which provides in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981 . . . [or] 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

The Supreme Court has noted that a "prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983). Attorney's fees for prevailing defendants "are not routine but are to be only sparingly awarded." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503 (3d Cir. 1991). Here, while the Court has granted the motion to dismiss the Second Amended Complaint, the Court cannot conclude that that pleading was "vexatious, frivolous, or brought to harass or embarrass the defendant." Nor can the Court conclude that it is obvious that Plaintiff cannot state a claim such that the motion to dismiss be granted without further leave to amend.

---

[3]     Plaintiff did not timely file a motion for reargument in connection with Count III, nor has it asserted that the Court's prior decision was in error. Having been presented with no reasons to reassess its prior decision, the Court declines to do so.

## VI. **<u>CONCLUSION</u>**

For the foregoing reasons, the Court will grant the Defendants' motion to dismiss Counts I and II of the Amended Complaint against Individual Defendants and Count III against Delaware State University.

An appropriate order will be entered.