IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY DEMOSS, | ) |
| Plaintiff. | ) ) ) |
| v. | ) ) ) C.A. No. 16-cv-680-MN-MPT |
| IRENE CHAPMAN-HAWKINS, In her individual capacity, TERESA HARDEE, In her individual capacity, and HARRY L. WILLIAMS, In his individual capacity, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Plaintiff Jeffrey DeMoss brought this action against Delaware State University ("DSU") on August 8, 2016, alleging claims for violation of the Equal Protection Clause and racial discrimination in connection with plaintiff's employment and termination.[1] DSU filed a Motion to Dismiss on September 6, 2016, and on September 16, 2016, plaintiff filed a First Amended Complaint, adding three individual defendants: Irene Chapman-Hawkins ("Hawkins"), Teresa Hardee ("Hardee"), and Harry L. Williams ("Williams").[2] Plaintiff's First Amended Complaint raised three claims, two against the individual defendants under 42 U.S.C. §§ 1983 and §1981 for violation of the Equal Protection Clause and for racial discrimination; and one claim under §2000d against DSU for racial discrimination.[3]

---

[1] D.I. 1.
[2] D.I. 3 and D.I. 4.
[3] *Id.*

On October 3, 2016, defendants collectively filed a Motion to Dismiss the First Amended Complaint for failure to state a claim, which the Court granted on September 7, 2017.[4] Plaintiff filed a Second Amended Complaint on October 3, 2016, adding allegations to his fact section of the complaint.[5] Defendants filed a Motion to Dismiss plaintiff's Second Amended Complaint, which the Court again granted on October 12, 2018.[6]

Plaintiff filed a Third Amended Complaint on October 26, 2018, which only alleges a single claim for violation of his Equal Protection rights under 42 U.S.C. §1983 against the individual defendants.[7] Currently before the court is defendants' motion to dismiss plaintiff's Third Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.[8]

## II. BACKGROUND

DSU is a historically black college, with a majority of African-American employees and students.[9] DSU is a corporation created and funded by the Delaware General Assembly, whose Board of Trustees is appointed by and includes the Governor.[10] Individual defendants are employed by DSU: Hardee, an African-American female in her late forties serves as Chief Operating Officer; Williams, an African-American male serves as President; and Hawkins, an African-American female serves

---

[4] D.I. 5 and D.I. 15.
[5] D.I. 18.
[6] D.I. 21 and D.I. 30.
[7] D.I. 32.
[8] D.I. 34
[9] D.I. 32 at 3.
[10] *Id.* at 2.

2

as Senior Associate Vice President of Human Resources.[11]

Plaintiff is a Caucasian male who was employed by DSU as its Executive Director for Dining and Auxiliary Services.[12] From 1978 to 2014, he worked as an Executive Director, Director, or Associate Director of Dining Services for four different universities.[13] Plaintiff was brought to DSU by its Executive Vice President for Finance Amir Mohammadi ("Mohammadi"), to create the Department of Auxiliary Services, and was employed from July 9, 2007 to October 3, 2014.[14] At all material times, plaintiff reported to Mohammadi, who was his direct supervisor.[15]

Plaintiff's duties included serving as a contract liaison for dining services, the campus bookstore, the copy/post office, concessions, and university transportation programs.[16] In January 2010, plaintiff was given added responsibility, and named operations director of the Martin Luther King, Jr. Student Center.[17] On January 10, 2010, Williams became DSU's tenth president.[18]

During his last three years of employment, plaintiff received the highest possible scores on his performance evaluations from DSU, and received the "Vice President's Award for Excellence" in September 2013.[19]

In August 2014, DSU named Hardee as the new Vice President of Finance.[20] At

---

[11] *Id.*
[12] *Id.* at 3.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* at 4.
[19] *Id.*
[20] *Id.*

3

this time, plaintiff began reporting to Hardee instead of Mohammadi.[21] She served as Vice President of Finance until 2015, when she became the Chief Operating Officer.[22] Plaintiff claims Hardee did not properly supervise him and rarely even spoke to him.[23]

On September 19, 2014, Hawkins, the Senior Associate Vice President of Human Resources, informed plaintiff in person and in writing that his employment would be terminated in two weeks, effective October 3, 2014.[24] Plaintiff claims there was no legitimate reason for his termination, which he contends was motivated by an intent to discriminate against him based on race.[25]

Shortly before his termination, plaintiff was driving with Mohammadi, who received a phone call from Williams.[26] Unknown to Williams, Mohammadi placed the call on speaker phone.[27] Plaintiff claims he heard Williams refer to him as a "white fat fuck." At another time, plaintiff contends Williams commented that he "doesn't get along with black people."[28] Plaintiff alleges Williams' reference to race evidences a motivating factor for his termination.[29] After his termination, Plaintiff contends Mohammadi told him that his termination was motivated by race, and that defendants wanted an African-American in his position.[30]

Thereafter, subsequent to his termination, a DSU Board Member, Jose Echiverri,

---

[21] *Id.* at 4.
[22] *Id.* at 2.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 4.
[26] *Id.*
[27] *Id.*
[28] *Id.* at 4-5.
[29] *Id.* at 5.
[30] *Id.*

4

told plaintiff, "it seems like the white people are being let go."[31] Plaintiff argues this comment referred to him and other Caucasian employees who were abruptly terminated and replaced by African-American employees.[32]

Plaintiff maintains DSU's stated reason for his termination was because of "a substantial reorganization effort."[33] Plaintiff asserts that no reorganization effort occurred and/or did not require the elimination of his position.[34] He further alleges his position continues to the present, and is performed by African-American women who have received raises.[35] As a result, his former duties and salary have not been eliminated.[36]

Plaintiff claims his termination was decided by Hardee and Williams, for the purpose to remove a Caucasian man in favor of African-Americans, and that other Caucasian employees were treated similarly, while African-Americans were treated more favorably.[37] Plaintiff further notes that on October 28, 2014, Williams announced that Carolyn Curry, Vice President of Advancement and Development, a sixty-two year old Caucasian female was relieved of her duties after ten years.[38]

Plaintiff alleges various other acts by DSU prove that his termination was discriminatory, not in good faith, and not for any legitimate organizational purpose.[39] He

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*

claims that DSU's practice was to provide managers with thirty days' notice before terminating them or eliminating their jobs.[40] Further, DSU's practice was to only eliminate positions at the end of the academic year on June 30, and always informed employees on or before May 31, if they were not being rehired.[41] Plaintiff's employment ended effective October 3, 2014, at the beginning of the academic year, with only two weeks' notice.[42]

Plaintiff argues that defendants complied with university practice as to African-American employees, but deviated from their practice regarding his termination and that of another Caucasian employee.[43] He alleges this deviation is further evidence of defendants' discriminatory intent.[44]

Plaintiff further asserts that DSU retained three significantly younger, similarly situated females: Student Center Director Jordan Schaffer, a Caucasian female in her thirties, who is married to an African-American male; Michelle Martin, an African-American female in her late forties or early fifties; and Michelle Fisher, an African-American female.[45] These women were promoted to associate vice president, the same position that plaintiff formerly held.[46]

Plaintiff claims that there are at least five African-American managers whose jobs were eliminated, who were placed in other positions within its HR and/or Finance

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.* at 7.
[44] *Id.*
[45] *Id.*
[46] *Id.*

6

Departments.[47] Plaintiff was not offered this opportunity as part of the university's reorganization plan.[48]

Plaintiff alleges that former Vice President of Student Affairs, Kemal Atkins, an African-American male, was provided several months advance notice before he was terminated. Atkins was allowed to conduct a job search during work time and given a farewell reception.[49] Plaintiff claims DSU did not provide this to Curry or him.[50]

As a result, plaintiff claims defendants' discrimination led to his termination, and an annual salary loss of $96,000 plus benefits.[51] Further, plaintiff asserts he suffered pain, suffering, emotional distress, and other lost wages, back pay, front pay, benefits, and loss of life's pleasures, caused directly and proximately by defendants' discrimination.[52]

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss under FED. R. CIV. P. 12(b)(6), a review of Rule 8(a)(2) is necessary. It requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[53] That standard "does not require 'detailed factual allegations,' but . . . demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."[54] Thus, to survive a motion to dismiss

---

[47] *Id.*
[48] *Id.*
[49] *Id.* at 8.
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] FED. R. CIV. P. 8(a)(2).
[54] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

7

under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face."[55] The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[56] Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations of the complaint.[57] "The issue is not whether a plaintiff will ultimately prevail, but whether the complainant is entitled to offer evidence to support the claims."[58] A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[59]

To survive a motion to dismiss under Rule 12(b)(6), the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[60] A plaintiff is obliged "to provide the 'grounds' of his entitle[ment] to relief" beyond "labels and conclusions."[61] Heightened fact pleading is not required: rather "enough facts to state a claim to relief that is plausible on its face" must be alleged.[62] Rejected are

---

[55] *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed R. Civ. P. 12(b)(6).
[56] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[57] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).
[58] *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citations omitted).
[59] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).
[60] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).
[61] *Twombly*, 550 U.S. at 555.
[62] *Id.* at 570.

unsupported allegations, "bald assertions," or "legal conclusion."[63] Further, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[64] The analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[65] Well-pled facts which only infer the "mere possibility of misconduct" do not show that "the pleader is entitled to relief" under Rule 8(a)(2).[66] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."[67]

## IV. DISCUSSION

Plaintiff alleges that the individual defendants violated 42 U.S.C. §1983, in acting under color of State law and depriving him of the privileges and immunities secured by the First and Fourteenth Amendments of the United States Constitution, in particular, his right to be free from discrimination on the basis of race and/or gender.[68] Plaintiff maintains defendants' actions violated his rights under the Equal Protection clause of

---

[63] *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.") (citations omitted); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient.); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self evidently false" are not accepted.).
[64] *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (A court is "not bound to accept as true a legal conclusion couched as a factual allegation.").
[65] *Iqbal*, 556 U.S. at 679.
[66] *Id.*
[67] *Id.*
[68] D.I. 32 at 9.

the Fourteenth Amendment.[69]

Defendants contend that plaintiff's Third Amended Complaint fails to state a claim and does not remedy the pleading deficiencies previously noted by this court. Defendants maintain that (1) the amended complaint does not include any new allegations to disturb the individual defendants' qualified immunity for counts I and II, and (2) does not include any new allegations to support a deprivation of Equal Protection under §1983.[70]

### A. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[71] A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."[72] "[T]he question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights."[73] Qualified immunity, thus, protects government officials from liability for "mere mistakes in judgment, whether the mistake is one of fact or one of law."[74] The court decides whether the facts alleged, taken in light most favorable to the party asserting injury, show a violation of a constitutional right and

---

[69] *Id.*
[70] D.I. 35.
[71] *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).
[72] *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).
[73] *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996).
[74] *Butz v. Economou*, 438 U.S. 478, 479, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978).

whether that right is clearly established.[75]

"Qualified immunity is an immunity from suit, rather than a mere defense to liability." To determine whether qualified immunity applies, the court asks two question: "(1) whether the plaintiff has alleged the violation of an actual constitutional right, and if so, (2) whether the right was clearly established at the time of the alleged violation."[76]

The right plaintiff alleges that an official violated must have been "clearly established" in a "particularized" sense. "'To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[77] "'When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law.'"[78] The court determines whether the facts alleged, taken in a light most favorable to the party asserting injury, show a violation of a constitutional right and whether that right is clearly established.[79]

### 1.     Equal Protection 42 U.S.C. §1983

Plaintiff alleges that he was discriminated against by individual defendants based on his race in violation of 42 U.S.C. §1983.[80] Section 1983 imposes liability on any person who, under color of state law, deprives another of any rights secured by the Constitution or the laws of the United States.[81] The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." To prevail,

---

[75] *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).
[76] *Brockstedt v. Sussex County Council*, 771 F. Supp. 2d 348, 354, 2011 U.S. Dist. LEXIS 29131, 16.
[77] *Clark v. Coupe*, 2018 U.S. Dist. LEXIS 217708, 19.
[78] *Id.*
[79] *Saucier v. Katz*, 533 U.S. 194, 201.
[80] D.I. 32 at 8-9.
[81] 42 U.S.C. § 1983.

plaintiff must allege facts showing both that (1) there was an adverse employment action; and (2) that race was a motivating factor in the individual defendants' decision.

"Under Third Circuit precedent, a § 1983 claim will survive a motion to dismiss under Rule 12(b)(6) if it "allege[s] the specific conduct violating the plaintiff's rights, the time and place of the conduct, and the identify of the responsible officials."[82]

Section 1983 "does not create substantive rights; rather it merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws."[83] Therefore, the initial question in any §1983 inquiry is whether the plaintiff has "alleged a deprivation of a constitutional right at all."[84] For a constitutional deprivation to be fairly attributable to the state, plaintiff must allege: that (1) the deprivation was caused by a state-created right or privilege or state-imposed rule; and 2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor."[85]

A private citizen may fairly be said to be a state actor when "he is a willful participant in joint activity with the State or its agents."[86] To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the United States Constitution committed by a person acting under color of state law.[87]

The Supreme Court has "pierced the . . . veil of private, individual conduct to find

---

[82] *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 666 (3d Cir. 1988).
[83] *Estate of Smith v. Marasco*, 318 F.3d 497, 505 (3d Cir. 2003) (quotations and internal citations omitted).
[84] *Id.* (quoting *Donahue v. Gavin*, 280 F.3d 371, 378 (3d Cir. 2002)).
[85] *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).
[86] *Id.*
[87] *Piecknick v. Commw. of Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

state action" in three categories of cases: "(1) where state courts enforced an agreement affecting private parties; (2) where the state 'significantly' involved itself with the private party; and (3) where there was private performance of a government action."[88]

This court previously found on two separate occasions that plaintiff had adequately pleaded that an adverse employment action occurred, but he failed to allege sufficient facts that race was a motivating factor in the individual defendants' decision.[89] The fact that plaintiff was terminated, without more, was insufficient to remove the protection of qualified immunity to the individual defendants under §1983.[90]

The Court found that the allegations added to plaintiff's Second Amended Complaint were largely conclusory statements and summaries of previously pleaded allegations. Further, plaintiff failed to assert the kind of allegations from which the Court may reasonably infer that plaintiff was discriminated against because of his race.

Plaintiff has added six paragraphs to the fact section of his Third Amended Complaint which provide support to his previously pled allegations.[91] Plaintiff alleges that shortly before his termination, he was driving with Mohammadi, who received a phone call from Williams.[92] Mohammadi placed the call on speaker phone, and plaintiff claims he heard Williams refer to him as a "white fat fuck."[93] At another time, he

---

[88] *Wright v. Pepsi Cola Co.*, 243 F. Supp. 2d 117, 121, 2003 U.S. Dist. LEXIS 1432, 7; quoting (*Magill v. Avonworth Baseball Conference*, 516 F.2d 1328 (3d Cir. 1975)).
[89] D.I. 15 and D.I. 30.
[90] *Id.*
[91] D.I. 32 at 4-5, ¶¶ 27-32.
[92] *Id.* at ¶ 27.
[93] *Id.*

13

contends Williams commented that he "doesn't get along with black people."[94] Plaintiff alleges this reference to race evidences a motivating factor for his termination.[95]

Plaintiff contends that after his termination, Mohammadi told him that his termination was motivated by race, and that defendants wanted an African-American in his position.[96] Additionally, a DSU Board Member, Jose Echiverri, told plaintiff, "it seems like the white people are being let go."[97] Plaintiff alleges this comment not only referred to him, but other Caucasian employees who were abruptly terminated and replaced by African-American employees.[98] Plaintiff alleges these remarks are enough to show race was a motivating factor for his termination.

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[99] Heightened fact pleading is not necessary: rather plaintiff must alleged sufficient facts which state a claim to relief that is plausible on its face.[100] As required under Rule 12(b)(6), the court must accept as true all material factual allegations of plaintiff's Third Amended Complaint. The facts alleged therein "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[101]

---

[94] *Id.* at ¶ 28.
[95] *Id.* at ¶ 29.
[96] *Id.* at ¶ 30.
[97] *Id.* at ¶ 31.
[98] *Id.* at ¶ 32.
[99] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[100] *Id.* at 570.
[101] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

Plaintiff has pled sufficient facts to show that race was a motivating factor in the individual defendants' decision. He has shown that he suffered an adverse employment action, and the facts alleged are sufficient raise an inference that race was a motivating factor in the individual defendants' decision to terminate him.

**V.     CONCLUSION**

For the foregoing reasons, I recommend that: defendant's motion to dismiss plaintiff's Third Amended Complaint (D.I. 34) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date: March 7, 2019                                  /s/ Mary Pat Thynge
                                                     Chief U.S. Magistrate Judge