IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY DEMOSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-680 (MN) |
| | ) |
| IRENE CHAPMAN-HAWKINS, in her | ) |
| individual capacity, TERESA HARDEE, in | ) |
| her individual capacity, and HARRY L. | ) |
| WILLIAMS, in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Andrew G. Ahern, III, JOSEPH W. BENSON, P.A., Wilmington, DE; Mark Frost, Ryan Lockman, MARK B. FROST & ASSOCIATES, Philadelphia, PA – attorneys for plaintiff

James Darlington Taylor, Jr., Jessica M. Jones, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE – attorneys for defendants

April 9, 2019
Wilmington, Delaware

*Maryellen Noreika* [signature]

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are the objections of Defendants, Irene Chapman-Hawkins, Teresa Hardee, and Harry L. Williams, (collectively, "Defendants") (D.I. 47) to Magistrate Judge Thynge's March 7, 2019 Report and Recommendation (D.I. 45, "the Report"). The Report recommended that the Court deny Defendants' motion to dismiss Plaintiff's Third Amended Complaint ("Amended Complaint") (D.I. 34). The Court has reviewed the Report (D.I. 45), Defendants' objections (D.I. 47), and Plaintiff's response thereto (D.I. 48), and the Court has considered *de novo* the objected-to portions of the Report and the relevant portions of Defendants' motion to dismiss, and Plaintiff's response to the motion (*see* D.I. 35, 40, 42). For the reasons set forth below, Defendants' objections are OVERRULED, the Report is ADOPTED, and Defendants' motion to dismiss is DENIED.

**I.    BACKGROUND**

The background of this case has been discussed at length in the Court's earlier opinions (D.I. 15, 30) and the Report (D.I. 45). As alleged in Plaintiff's Complaints, Jeffrey DeMoss ("Plaintiff" or "DeMoss") "is a Caucasian male who was employed by [Delaware State University ("DSU")] from July 9, 2007 to October 3, 2014, as its Executive Director for Dining and Auxiliary Services." (D.I. 4 ¶ 12; D.I. 18 ¶ 12; D.I. 32 ¶ 12). Prior to his employment at DSU, DeMoss held similar positions at four different universities for approximately thirty-six years. (D.I. 4 ¶ 13; D.I. 18 ¶ 13; D.I. 32 ¶ 13). In January 2010, DeMoss was "also named operations director of the Martin Luther King Jr. Student Center, as an added duty." (D.I. 4 ¶ 18; D.I. 18 ¶ 18; D.I. 32 ¶ 18). Around the same time, Harry L. Williams ("Williams") became the tenth President of DSU. (D.I. 4 ¶ 19; D.I. 18 ¶ 19; D.I. 32 ¶ 19). In the three years of his employment prior to September of 2014, "[DeMoss] received the highest possible scores on his performance evaluations from DSU

1

. . . [and] . . . received the 'Vice President's Award for Excellence' from DSU in September 2013." (D.I. 4 ¶ 20; D.I. 18 ¶ 20; D.I. 32 ¶ 20).

In August 2014, DeMoss "began reporting to the new Vice President of Finance, Dr. Teresa Hardee, an African American female in her late 40's." (D.I. 4, ¶ 21; D.I. 18, ¶ 21; D.I. 32 ¶ 21). On September 19, 2014, DeMoss was informed by Irene Chapman-Hawkins ("Hawkins"), Senior Associate Vice President of Human Resources, that his "employment would be terminated in two weeks, effective October 3, 2014." (D.I. 4 ¶ 23; D.I. 18 ¶ 23; D.I. 32 ¶ 23). The "stated reason for Plaintiff's termination by the University was that it was part of 'a substantial reorganization effort.'" (D.I. 4 ¶ 25; D.I. 18 ¶ 27; D.I. 32 ¶ 33). DeMoss asserts that the stated reorganization effort was a "pretext" and "was not in fact occurring and/or did not require the elimination of Plaintiff's position." (D.I. 4 ¶ 26; D.I. 18 ¶ 28; D.I. 32 ¶ 34). He asserts that his "position continues to this day, and is being performed by African-American women who have received raises to perform said duties." (D.I. 4 ¶ 27; D.I. 18 ¶ 29; D.I. 32 ¶ 35). He further asserts that DSU offered positions within the University to other African American managers whose positions were eliminated. (D.I. 4 ¶ 38; D.I. 18 ¶ 43; D.I. 32 ¶ 49). And he asserts that DSU did not give him the same notice of termination it gave to others or follow its "custom and practice . . . to only eliminate positions at the end of the academic year." (D.I. 4 ¶¶ 32, 39; D.I. 18 ¶¶ 35, 44; D.I. 32 ¶¶ 41, 50). DeMoss asserts that the decision to retain and promote those employees and to terminate his employment without following the customary practice was discriminatory.

The Court dismissed Counts I and II of the First Amended Complaint, finding that the allegations were insufficient to remove the protection of qualified immunity from Hawkins, Hardee, and Williams ("the Individual Defendants"), and insufficient for the Court to reasonably infer that DeMoss was discriminated against because he is White. (D.I. 15 at 4-7). Subjective beliefs,

unsupported by factual allegations, cannot give rise to an inference of discrimination. (*Id.* at 7). The Court also dismissed Count III, finding that Plaintiff had failed to make a plausible showing that the primary purpose of the Federal funding received by DSU was for employment, and thus his Title VI claim was deficient. (*Id.*).

In his Second Amended Complaint (D.I. 18), the counts remained the same, but Plaintiff added new factual allegations. Count I alleged an equal protection claim against the Individual Defendants arising under 42 U.S.C. § 1983 based on race discrimination. Count II alleged a race discrimination claim against the Individual Defendants under 42 U.S.C. § 1981. Count III alleged a race discrimination claim against DSU under Title VI. As with the First Amended Complaint, the Court dismissed Counts I and II of the Second Amended Complaint, finding that the allegations were insufficient to remove the protection of qualified immunity from the Individual Defendants and insufficient for the Court to reasonably infer that DeMoss was discriminated against because he is White. (D.I. 30 at 7-9). The Court also dismissed Count III, finding that Plaintiff had again failed to make a plausible showing that the primary purpose of the Federal funding received by DSU was for employment, and thus his Title VI claim was deficient. (*Id.*).

In his Third Amended Complaint, Plaintiff alleged a single claim for violation of his Equal Protection rights under 42 U.S.C. §1983 against the current Defendants. Plaintiff added six paragraphs to the "Facts" section in an attempt to provide support to his previously pleaded allegations. (D.I. 32, ¶¶ 27-32). For example, Plaintiff alleged that shortly before his termination, he was driving with Amir Mohammadi ("Mohammadi"), Executive Vice President for Finance, who received a phone call from Williams. (D.I. 32, ¶¶ 14, 27). Mohammadi placed the call on speaker, and Plaintiff alleges that he heard Williams refer to Plaintiff as a "white fat fuck." (D.I. 32, ¶ 27). Plaintiff also contends that on a separate occasion, Williams commented that Plaintiff

3

"doesn't get along with black people." (D.I. 32, ¶ 28). Plaintiff alleges these references to his race evidence a motivating factor for his termination. (D.I. 32, ¶ 29).

In his Third Amended Complaint, Plaintiff also contends that after his termination, Mohammadi told him that his termination was motivated by race, and that Defendants wanted an African-American in his position. (D.I. 32, ¶ 30). Additionally, Plaintiff alleges that a DSU Board Member, Jose Echiverri, told plaintiff, "it seems like the white people are being let go." (D.I. 32, ¶ 31). Plaintiff alleges this comment not only referred to him, but other Caucasian employees who were abruptly terminated and replaced by African-American employees. (D.I. 32, ¶ 32).

## II.   **LEGAL STANDARDS**

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "To survive a motion to dismiss, [however,] a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions

and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## III. DISCUSSION

Defendants object that "Plaintiff's Third Amended Complaint alleges no facts from which this Court could find that the individual Defendants violated Section 1983." (D.I. 47 at 3). Specifically, Defendants argue that "Plaintiff's Third Amended Complaint adds mere gloss to conversations and events previously plead in his properly dismissed Second Amended Complaint (all of which were known to Plaintiff at the outset of this litigation) and does not allege any new facts to support his claims or otherwise correct the deficiencies identified by this Court in its October 12, 2018 Memorandum Opinion." (D.I. 47 at 4). The Court disagrees.

The Report correctly noted that Plaintiff alleges that he was discriminated against by individual defendants based on his race in violation of 42 U.S.C. §1983. (D.I. 45 at 11). Section 1983 imposes liability on any person who, under color of state law, deprives another of any rights secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983. Section 1983 "does not create substantive rights; rather it merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Estate of Smith v. Marasco*, 318 F.3d 497, 505 (3d Cir. 2003) (quotations and internal citations omitted). Therefore, the initial question in any § 1983 inquiry is whether the plaintiff has "alleged a deprivation of a constitutional right at all." *Id.* at 505-06 (quoting *Donahue v. Gavin*, 280 F.3d 371, 378 (3d Cir. 2002)).

Under Third Circuit precedent, a § 1983 claim will survive a motion to dismiss under Rule 12(b)(6) if it "allege[s] the specific conduct violating the plaintiff's rights, the time and place of the conduct, and the identity of the responsible officials." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 666 (3d Cir. 1988). Here, Plaintiff maintains Defendants' actions violated his rights under the Equal Protection clause of the Fourteenth Amendment. (D.I. 32 at 9). The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." To prevail, plaintiff must allege facts showing both that (1) there was an adverse employment action;[1] and (2) that race was a motivating factor in the individual defendants' decision.

As the Report noted, Plaintiff added "six paragraphs to the fact section of his Third Amended Complaint which provide support for his previously pled allegations." (D.I. 45 at 13). Contrary to Defendants assertions, the new matter added was not simply a rehash of prior assertions or conclusory allegations. The new matter included additional facts not previously pleaded, and facts that taken as true raise a plausible claim that race played a role in Plaintiff's termination in violation of the Equal Protective clause. Thus, the new allegations – combined with the prior allegations – "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555.

As to Defendants' objections based on qualified immunity, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (internal quotation marks omitted); *see also George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when "[t]he contours of the

---

[1] There is no dispute that Plaintiff's termination was an adverse employment action.

6

right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[T]he question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights." *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996). Qualified immunity, thus, protects government officials from liability for "mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 479 (1978). Indeed, properly applied, the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *George*, 738 F.3d at 572 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In addressing qualified immunity, the Court must first determine whether the facts alleged in the Complaint show the violation of a constitutional right, and, if so, the Court must then determine whether that right was clearly established at the time of the alleged violation. *See Torisky v. Schweiker*, 446 F.3d 438, 442-43 (3d Cir. 2006).

Here, the Court has already determined that taking the allegations as true, Plaintiff has plausibly pleaded that race was a motivating factor in the Defendants' decision to terminate his employment in violation of the Equal Protective clause. Defendants' objections to denial of the motion to dismiss based on qualified immunity are also overruled.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court OVERRULES Defendants' objections (D.I. 47) and ADOPTS the Report and Recommendation (D.I. 45). Defendants' motion to dismiss (D.I. 34) is DENIED.